## HARRY JEFFREY, Appellant, v. UNION ELECTRIC LIGHT & POWER COMPANY, Respondent.

**St. Louis Court of Appeals, February 4, 1913.**

1. ELECTRICITY: Uninsulated Wire: Action for Death: Sufficiency of. Evidence. In an action against an electric light company for the death of a lineman employed by a telephone company, caused by a shock received from a telephone wire which had fallen across a defectively insulated high tension wire maintained by defendant, *held* that the question of defendant's negligence was properly submitted to the jury.

2. ————: ————: ————: Contributory Negligence: Instructions. In an action against an electric light company for the death of a lineman employed by a telephone company, caused by a shock received from a telephone wire which had fallen across a defectively insulated high tension wire maintained by defendant, *held* that an instruction which was authorized by the evidence, that if the jury believed from the evidence that the act of decedent in taking hold of the telephone wire, if the jury should find from the evidence that he did take hold of it, was an act that a reasonably prudent person of his age and knowledge would not have done under the circumstances, and that such act directly contributed to his death, the verdict should be for defendant, was a correct instruction.

3. ————: ————: ————: ————: ————. In an action for injuries to an electric lineman, from a defectively insulated

electric light wire, it is improper to instruct the jury that the mere omission of the lineman to wear rubber gloves or boots. precludes his right of recovery as a matter of law.

4. ———: ———: ———: ———: ———. In an action against an electric light company for the death of a lineman employed by a telephone company, caused by a shock received from a telephone wire which had fallen across a defectively insulated high tension wire maintained by defendant, the court instructed that it was decedent's duty to exercise reasonable care for his safety, and if, in attempting to remove the telephone wire, he omitted to take such precautions as a reasonably prudent boy of his age and experience should have taken, and, in the exercise of ordinary care, he could have known of his liability to injury from the cable and that the wearing of rubber gloves and boots would have lessened his peril, and if the jury believed that the wearing of such articles would have been a reasonable precaution for him to have taken for his own safety, and that, knowing of the peril of working without them, he took hold of the wire without taking such precaution, and thereby directly contributed to his own injury, the jury should find for defendant. *Held*, that the instruction was not vulnerable to the objection that it charged that the failure to wear rubber gloves or boots would preclude a recovery as a matter of law, but, on the contrary, it properly submitted that matter to the jury for a finding.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*Frederick A. Mayhall* for appellant.

(1) When injury or death is caused by coming in contact with such a wire, it is conclusively presumed that the insulation of the wire was defective, and the doctrine of *res ipsa loquitur* applies. Von Trebra v. Gas Light Co., 209 Mo. 659; Geisman v. Edison El. Co., 173 Mo. 678; Ryan v. Railroad, 190 Mo. 621; Young v. Oil Co., 185 Mo. 634; Gannon v. Gas Light Co., 145 Mo. 502; Dolan v. Same, 145 Mo. 550; 15 Cyc. 471. (2) It is not contributory negligence, as a matter of law, for one to attempt to remove a telephone wire from

the street, without rubber gloves. Croswell on Electric Law, sec. 251; 2 Joyce on Electric Law (2 Ed.), sec. 607; Warren v. Railroad, 141 Mich. 298; Grimm v. Del. & Atl. Tel. Co., 72 N. J. Law, 276; Rowe v. Tel. Co., 66 N. J. Law, 19; 1 Joyce on El. Law, secs. 446, 449a; Bourget v. City of Cambridge, 156 Mass. 391; Klages v. Mfg. Co., 88 Minn. 458; Fox v. Village of Manchester, 183 N. Y. 141; Hebert v. Ice Co., 111 La. 532; Citizen Tel. Co. v. Thomas, 99 S. W. 879; Guinn v. Del., etc. Co., 72 N. J. Law, 276; Newark E. L. & T. Co. v. McGilvery, 62 N. J. Law, 451; Light Co. v. Orr, 59 Ark. 215; 2 Joyce on Elec. Law (2 Ed.), sec. 607; Croswell on Elec. Law, sec. 251.

*Schnurmacher & Rassieur* for respondent.

(1) Notwithstanding the strict standard of care imposed upon electric wire using companies in this State, there can be no liability where the injured party was himself guilty of negligence contributing to the injury. Winkelmann v. Light Co., 110 Mo. App. 184; Trout v. Gas Light Co., 151 Mo. App. 207; Clark v. Railroad, 234 Mo. 396; Roberts v. Telephone Co., 166 Mo. 370; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654. (2) The questions of negligence on the part of the company and of contributory negligence on the part of the employee, are ordinarily for the jury to determine, particularly the question of contributory negligence. 2 Joyce on Electric Law (2 Ed.), sec. 663; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654; Trout v. Gas Light Co., 151 Mo. App. 207, 160 Mo. App. 604; Von Trebra v. Gas Light Co., 209 Mo. 648. (3) Whether the failure of deceased to use the rubber gloves, furnished him for just such occasions as when he met his death, constituted contributory negligence, was eminently a question for the jury. Junior v. Light & Power Co., 120 Mo. 79; Trout v. Gas Light Co., 151 Mo. App. 207, 160 Mo. App. 604; Mahan v. Street Railway, 189 Mass. 1.

NORTONI, J.—This is a suit for damages alleged to have accrued to plaintiff through the negligence of defendant, which, it is said, occasioned the wrongful death of his minor son. The finding and judgment were for defendant, and plaintiff prosecutes the appeal.

Plaintiff is the father of Roy Jeffrey, a youth aged seventeen years, one month and nineteen days, at the date of his death. Plaintiff's son was in the employ of the Bell Telephone Company, and had been for six months, as a wire splicer and inspector, and came to his death while engaged in the line of duty through receiving an electric shock communicated from defendant, Union Electric Light & Power Company's wires by means of a Bell Telephone wire which he held in his hand. The young man had been directed by his foreman to accompany another workman, Burns, to the alley connecting Taylor with Euclid avenues and running east and west between Berlin and Maryland avenues in St. Louis for the purpose of testing the wires of the Bell Telephone Company. The wires of the Bell Telephone Company, in whose employ plaintiff's son was at the time, and those of defendant, Union Electric Light & Power Company, both occupied the same poles on the north side of the alley. There were several cross arms on the poles and it appears that the wires of defendant Union Electric Light & Power Company were made fast to the lower cross arms, while those of the Bell Telephone Company were made fast to the upper cross arms, about three feet above.

A severe rain and windstorm occurred about one o'clock during the day and as a result of this the limb of a tree was cast against a Bell Telephone wire with sufficient force to break it. Upon the breaking of the wire, one end fall to the ground near the center of the alley, while a portion of the wire above rested upon the cable of defendant Union Electric Light & Power

Company. The evidence tends to prove that the insulation was broken and worn off of the cable of defendant company at the point where the telephone wire came in contact with it. While plaintiff's son and his companion were engaged about a telephone pole in another portion of the alley near two o'clock in the afternoon, a gentleman, passing, called their attention to the fact that a telephone wire had been broken by the storm an hour before and one end had fallen to the ground. Decedent thereupon said to his companion that he would go up the alley and investigate the "trouble." It appears that plaintiff's son had been in the employ of the telephone company for several months and was familiar with the danger incident to high electric currents, though it is said no great danger inheres in the handling of electric light wires unless they come in contact with others heavily charged with the current. However, the evidence is that the electric light cable of defendant across which the telephone wire had fallen was a high tension wire and carried an electrical current of 2200 voltage. Such current was dangerous to human life and the evidence reveals that plaintiff's son and all of those engaged in such work were familiar with this fact. Defendant's instructions to plaintiff's son and to all its employees were to treat all wires as live wires and handle them with rubber gloves and to wear rubber boots while so doing. Furthermore, it had furnished the young man and his companion with rubber gloves and rubber boots to wear when handling live wires or wires which suggested danger. The abrasions, or broken insulation, on defendant's cable across which the telephone wire had fallen were open and obvious to one standing upon the ground beneath, for several of plaintiff's witnesses so stated the fact to be and no one denies it. Plaintiff's son approached the broken wire in the alley and was seen to look up at the point where it lay across defendant's

171 Mo. App.—3

cable before he touched it. After so looking at the crossing of the wires and without putting on rubber gloves or boots, he took the end of the broken telephone wire in his hand and met an instant death by means of the electric current communicated therefrom, which, it is said, passed through him and formed a circuit with the damp earth below.

The evidence abundantly reveals a case of negligence on the part of defendant and the court properly submitted that question to the jury. Indeed, there are no criticisms leveled against the instructions of the court pertaining to the matter of defendant's negligence. The burden of the argument advanced here for a reversal of the judgment is directed against the instruction which submitted the question of plaintiff's contributory negligence to the jury. In view of decedent's experience, though but a youth, and of his knowledge of the danger which inhered in like situations, the evidence tends with great force to suggest that he was careless of his own safety in taking hold of the end of the telephone wire as it rested in the alley and lay across the defendant's defective high tension cable above his head. On this question the court instructed the jury that if it believe from the evidence that the act of plaintiff's deceased minor son in taking hold of the fallen telephone wire, if the jury should find from the evidence that he did take hold of and try to remove it, was an act which a reasonably prudent person of his age, experience and knowledge would not have done at the time and under the circumstances and surroundings shown by the evidence and that such act directly contributed to his death, then the verdict should be for defendant. Obviously this instruction was proper in the circumstances of the case, and it is difficult to perceive the full meaning of the argument directed against it.

However, we believe the argument touching the court's instructions on the question of the contribu-

tory negligence of the decedent pertains rather to the instruction which treats with the matter of the young man's failure to wear rubber gloves or rubber boots while undertaking a task which suggested danger. As to this question, the court instructed the jury as follows:

"The jury is instructed that it was the duty of plaintiff's deceased son to himself to exercise reasonable care for his own safety, and if you believe under the evidence in this case that he took hold of and attempted to remove the fallen telephone wire, and that in doing so he omitted to take such precautions as a reasonably prudent boy of his age and experience should have taken, and if the jury believe from the evidence that he knew, or if in the exercise of ordinary care in his vocation he would have known of his liability to injury from defendant's wire, and that the wearing of rubber gloves or rubber boots would have lessened his peril, and if the jury believe from the evidence that the wearing of either rubber gloves or rubber boots would have been a reasonable and proper precaution for him to take for his own safety under the circumstances and in his situation, and that knowing the peril of attempting to remove said wire without either rubber gloves or rubber boots, he took hold of same without such precaution and thereby directly contributed to his injury, then the jury will find for the defendant."

It is urged that the court should not tell the jury, as a matter of law, that the mere omission to wear rubber gloves or rubber boots would preclude a right of recovery. The proposition thus advanced may be accepted as entirely sound, for the court did not so instruct. To have thus declared the law would, no doubt, have infringed plaintiff's rights, for such an instruction would amount to a peremptory direction of a verdict for defendant. However, the instruction above copied is not open to this criticism, for by it the jury

were informed that if it should be found from the evidence that plaintiff's son knew of his liability to injury and that the wearing of the rubber gloves or rubber boots would have lessened his peril and that the wearing of either such gloves or boots would have been a reasonable and proper precaution for him to take for his own safety under the circumstances and that knowing of such peril he attempted to remove the telephone wire without either rubber gloves or rubber boots and that the failure on his part to wear such gloves or boots directly contributed to his death, then the finding might be for defendant on that score. Instead of telling the jury as a matter of law that the failure on the part of the young man to wear rubber gloves or boots precluded a right of recovery, the instruction submits the question of the decedent's knowledge of the danger and his knowledge that the wearing of such gloves and boots would diminish his peril and that such were reasonable precautions to be taken by one in the circumstances of the case approaching such a highly dangerous task. No one can doubt that an instruction incorporating the elements of that above copied was entirely proper in the circumstances of the case. The courts generally declare that the question here made is one for the jury and the instruction properly submitted it. [See Trout v. Laclede Gas Light Co., 151 Mo. App. 207, 132 S. W. 58; s. c., 160 Mo. App. 604, 140 S. W. 1198; Mahan v. Newton, etc., Ry. Co., 189 Mass. 1.] From a reading of the record it is to be inferred that the jury denied plaintiff's right of recovery on the theory that his son come to his death as a result of his careless act in taking the telephone wire in his hand with full knowldge of the danger and without utilizing such safety appliances as rubber gloves, etc., which it is conceded defendant furnished him for use.

We have examined the other matters urged in the brief for a reversal but do not consider them of suffi-

cient importance to merit discussion in the opinion. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, concurs. *Allen, J.*, not sitting.